# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46314

ERICA KLEIN,

    Plaintiff-Respondent,

v.

FARMERS INSURANCE COMPANY OF IDAHO,

    Defendant-Appellant.

Pocatello, September 2019 Term

Opinion filed: November 26, 2019

Karel A. Lehrman, Clerk

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Rick Carnaroli, District Judge.

The judgment of the district court is affirmed.

Cooper & Larsen, Pocatello, for Appellant. Gary Cooper argued.

Law Office of Kenneth E. Lyon, III, Reno, Nevada, for Respondent. Kenneth E. Lyon, III argued.

_____

MOELLER, Justice.

This case arises from a claim for underinsured motorist (UIM) benefits and the resulting dispute over the date the action accrued under the statute of limitations. In its motion for summary judgment, Farmers Insurance Company of Idaho argued that Erica Klein was barred from pursuing a supplemental UIM claim because the five-year statute of limitations in Idaho Code section 5-216 had run. Farmers asserted that the statute of limitations began to run on either the date of the accident or the date Klein settled with the third party tortfeasor, both of which occurred more than five years prior to Klein filing her complaint to compel arbitration of her UIM claim. The district court denied Farmers's motion and subsequent motion for reconsideration, holding that the "breach of contract" rule is the proper method of calculating the accrual date for Klein's cause of action. Farmers appeals the district court's denial of both motions.

1

This appeal presents an issue of first impression in Idaho, inasmuch as we are asked to determine when the statute of limitations begins to run on a cause of action for UIM benefits under an automobile insurance policy. After considering the different approaches taken by other states, we adopt the majority's "breach of contract" rule and affirm the district court's decisions.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On February 1, 2010, Klein was driving her vehicle when she was "t-boned" by another vehicle driven by Seth Hale, the third party tortfeasor insured by Allstate. Klein sustained injuries as a result of the accident that she claims are permanent—namely, three disc protrusions that continue to cause pain and muscle spasms. At the time of the accident, Klein was insured by Farmers under a policy that provided $500,000 in UIM benefits. The terms of the policy for uninsured coverage—which includes underinsured motorist coverage—state:

> We will pay all sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by the **insured person**. The **bodily injury** must be caused by **accident** and arise out of the ownership, maintenance or use of the **uninsured motor vehicle.**
>
> Determination as to whether an **insured person** is legally entitled to recover **damages** or the amount of **damages** shall be made by agreement between the **insured person** and us. If no agreement is reached, the decision will be made by arbitration.

(Emphasis in original). The policy also includes an arbitration provision, which provides:

> If an **insured person** and we do not agree (1) that the person is legally entitled to recover **damages** from the owner or operator of an **uninsured motor vehicle**, or (2) as to the amount of payment under this part, either that person or we may demand that the issue be determined by arbitration.
>
> . . .
>
> Formal demand for arbitration shall be filed in a court of competent jurisdiction. . . . . Demand may also be made by sending a certified letter to the party against whom arbitration is sought, with a return receipt as evidence.

(Emphasis in original).

On December 14, 2010, about ten months after the accident, Klein notified Farmers of her intent to settle her injury claim with Allstate for the full policy amount of $25,000. A few months later, on April 25, 2011, Klein resolved her claim against Hale for $25,000, *i.e.*, the full liability insurance limit from Allstate. Klein subsequently submitted a demand letter and accompanying UIM package to Farmers on November 7, 2012, demanding payment in the

amount of $250,000 under her UIM benefits policy. Approximately one month later, Farmers issued a check to Klein for $75,000 for the undisputed portion of the UIM benefits. Klein did not refuse the payment and cashed the settlement check. Nevertheless, Klein's claim with Farmers remained open. In an email from Farmers dated December 13, 2012, the Farmers adjuster acknowledged "that [the $75,000 payment] does not resolve the UIM claim. I did make this offer to resolve the claim but there has not been any signed release from your client and I will be keeping the claim open."

For the next few years, Farmers continued to contact Klein and her prior attorney—who negotiated the settlement with Allstate—to finalize the claim, but Farmers rarely received any response in return. Finally, on July 7, 2016—six and a half years after the accident and more than five years after settling with Hale and Allstate—Klein's new attorney, Kenneth Lyon, contacted Farmers because Klein hired his firm to "resolve her outstanding underinsured motorist claim." Farmers responded on August 12, 2016, stating that it was prepared to respond to any demand for payment within sixty days of receipt of proof of loss. Six months later, on February 7, 2017, Klein provided Farmers with a supplemental demand packet. On April 4, 2017, Farmers's adjuster confirmed receipt of the supplemental demand and indicated that he had completed his evaluation. The adjuster also requested a two-week extension to respond to the supplemental demand as his supervisors reviewed the evaluation of Klein's claim. Klein agreed to the extension.

When the two-week extension passed, Klein reached out to Farmers for an update. Farmers informed Klein that her claim was barred by the statute of limitations and invited Klein to participate in mediation to resolve her claim. The parties later participated in mediation, but they were unsuccessful in reaching a resolution. Subsequently, Klein informed Farmers that the issue would need to be resolved through arbitration pursuant to the terms of her policy. Klein sent a letter to Farmers putting it on notice that she "intended to seek pre-judgment/pre-arbitration interest and attorney fees . . . unless other alternatives would be reached." Farmers interpreted this as a demand for arbitration, and informed Klein that it was seeking permission to file a declaratory action to resolve the statute of limitations question.

On November 22, 2017, Klein filed a complaint with the district court seeking an order requiring Farmers to participate in arbitration regarding the UIM claim. Farmers filed an answer, affirmatively alleging that the claim was now barred by the statute of limitations and later moved

3

for summary judgment on the same grounds. The district court denied the motion for summary judgment, prompting Farmers to file a motion for reconsideration, which the court also denied. The district court noted that there are three approaches to the issue of when a UIM claim accrues: the "date of accident" rule, the "breach of contract" rule, and the "settlement/judgment" rule. The court further explained that it denied summary judgment to Farmers because it believed Idaho would follow the "breach of contract" rule as the relationship between Klein and Farmers is contractual in nature. The district court also noted its willingness to consider a motion for permissive appeal as the parties had presented a question of first impression. Farmers filed a motion for permissive appeal pursuant to Idaho Appellate Rule 12. This Court granted the motion and Farmers subsequently filed its appeal.

## II. STANDARD OF REVIEW

When a court reviews a motion for reconsideration, it applies the same standard of review for the interlocutory order being reconsidered. *Westby v. Schaefer*, 157 Idaho 616, 621, 338 P.3d 1220, 1225 (2014). Thus, this Court must consider the standard for granting the underlying interlocutory order when it reviews the appeal of a motion for reconsideration. *Id.* Here, the reconsidered motion was a motion for summary judgment. Summary judgment is proper where "there is no genuine issue of material fact, entitling the moving party to judgment as a matter of law." *Verity v. USA Today*, 164 Idaho 832, 841, 436 P.3d 653, 662 (2019). In addition, "[a]ll facts and inferences must be drawn in favor of the nonmoving party." *Id.*

## III. ANALYSIS

The parties agree that the applicable statute of limitations is set forth in Idaho Code section 5-216, which provides that an action on a written contract must be initiated within five years. However, this appeal presents a question of first impression for this Court: whether, pursuant to that statute, the accrual date for the statute of limitations on a UIM claim begins on the day (1) the insurance company breaches its contract with the insured, (2) the insured reaches a settlement or obtains a judgment against the third party tortfeasor, or (3) the accident occurred. Each accrual rule has been applied in various jurisdictions, although the majority of jurisdictions deciding this issue have applied the "breach of contract" rule. *See, e.g., Erie Ins. Exch. v. Bristol*, 174 A.3d 578, 587 (Pa. 2017). Farmers argues that either the "settlement or judgment" rule or "date of incident" rule should apply—both of which would bar Klein's claim—because each rule presents an objectively certain date known by both parties. Klein contends that the district court

4

correctly applied the "breach of contract" rule, which is the most consistent with the arbitration provision in the UIM policy and Idaho law. We agree with Klein and hold that the district court applied the correct accrual date.

The primary basis for Farmers's contention that this Court should follow the "date of incident" rule rests on our prior decision in *Hill v. American Family Mutual Insurance Co.*, in which this Court concluded that "exhaustion clauses in UIM automobile policies [are] void, unenforceable, and severable in Idaho." 150 Idaho 619, 627, 249 P.3d 812, 820 (2011). Farmers argues that the "date of incident" rule is the most consistent with Idaho law because *Hill* made an insurer's liability for UIM benefits immediately enforceable following the accident. However, inasmuch as *Hill* voided exhaustion provisions for "dilut[ing] Idahoans' protection against underinsured drivers and [preventing] insureds from collecting legitimate claims," *id.* at 630, 249 P.3d at 823, it did not establish a date of accrual for UIM claims or require the insured to immediately pursue a UIM claim following the accident. In fact, *Hill*'s plaintiff *first* settled with the third party tortfeasor and *then* pursued coverage from her UIM insurance coverage. *Id.* The insurance company only denied her UIM claim because she had failed to "exhaust" the bodily-injury policy by settling for less than its full value. *Id.* at 621, 249 P.3d at 815. Thus, *Hill* dealt only with the insurance policy's exhaustion claim in light of the 2008 legislation that required insurers to offer UIM coverage, an act that afforded greater protections to the public from underinsured motorists. The question of the date of accrual for UIM claims remains unanswered. *See id.* at 630, 249 P.3d at 823.

This date of accrual question has arisen in numerous jurisdictions over the years, prompting three different legal approaches with the "breach of contract" rule emerging as the majority rule amongst our sister jurisdictions. *See, e.g., Erie Ins. Exch.*, 174 A.3d at 587. The foundation for this rule rests upon the bedrock of contract law. Because there is a contractual relationship between the insurer and insured in UIM claims, most courts have focused on the alleged breach by the insurer (*i.e.*, the refusal to pay the full amount of the claim) as the occurrence that gives rise to the cause of action, and thus, triggers accrual. *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 728 (Alaska 2013); *Spear v. California State Auto. Assn.*, 831 P.2d 821, 825 (Cal. 1992); *Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 784 (Iowa 2000); *Berkshire Mut. Ins. Co. v. Burbank*, 664 N.E.2d 1188, 1188 (Mass. 1996); *Vega v. Farmers Ins. Co. of Oregon*, 918 P.2d 95, 98 (Or. 1996); *Erie Ins. Exch.*, 174 A.3d at 587–90;

*Am. States Ins. Co. v. LaFlam*, 69 A.3d 831, 840–41 (R.I. 2013); *Blutreich v. Liberty Mut. Ins. Co.*, 826 P.2d 1167, 1170–71 (Ariz. Ct. App. 1991). Indeed, the UIM policy at issue here is a written contract, the claim for UIM benefits concerns a right bestowed by the contract, and the essence of the relationship between the insurer and the insured is defined by the terms of the contract.

The Supreme Court of Pennsylvania dealt with an analogous situation to Klein's claim in *Erie Insurance Exchange v. Bristol*, where the insured plaintiff filed an uninsured motorist (UM) claim following a hit-and-run accident. 174 A.3d 578, 580 (2017). His insurance policy afforded coverage of $500,000 per accident and contained an arbitration clause. *Id.* About two years after the accident, the plaintiff's attorney put the insurance company on notice of the UM claim. *Id.* The insurance company reserved its rights and each party selected arbitrators. *Id.* at 580–81. Other than a little correspondence between the parties, no action was taken until the insurance company filed an action for declaratory judgment in 2013, approximately eight years after the accident. *Id.* at 581. The insurance company sought a determination of whether the plaintiff's UM claim was time barred by Pennsylvania's four-year statute of limitations, arguing that the accrual date was the date of the accident. *Id.*

As an issue of first impression, the Supreme Court of Pennsylvania examined the statutory language of the applicable contract statute of limitations as well as the laws of other jurisdictions that dealt with this question. *Id.* at 585–90. The court concluded that "the proper circumstance to start the running of the limitation period is an alleged breach of the insurance contract, which will be occasioned in this context by a denial of a claim or the refusal to arbitrate." *Id.* at 589. While the majority of case law from other jurisdictions concurred with this conclusion, the court's primary basis for its determination was in applying general contract principles and the controlling language of the statute of limitations. *Id.* Like in Idaho, Pennsylvania holds that the running of the limitations period starts when a cause of action arises:

> *"Unless a statute provides otherwise, the statute of limitations begins to run at the time when a complete cause or right of action accrues or arises, which occurs as soon as the right to institute and maintain a suit arises."*
>
> . . .
>
> Therefore, applying these general contract principles to the enforcement of an insured's UM/UIM claim, the statute of limitations would begin to run when the insured's cause of action accrued, i.e., when the insurer is alleged to have breached its duty under the insurance contract.

*Id.* at 585–86 (emphasis in original) (quoting 54 C.J.S. *Limitations of Actions*, § 81).

In contrast, the minority approaches—both the "settlement or judgment" rule and the "date of incident" rule—conflict with Idaho law. Running the limitations period at the date of settlement with, or entry of judgment against, the tortfeasor "is based on a form of the discovery rule used in tort cases which is that the insured has no way of knowing what liability, if any, the UM/UIM carrier will have until the insured has exhausted the liability coverage of the tortfeasor by settlement or judgment." *Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 783 (Iowa 2000) (analyzing and rejecting "the settlement/judgment" rule). This tort-based rule also tends to look at the insurance policy's controlling language—exhaustion clauses in particular—rather than contract principles or the language of the applicable statute of limitations. *See Brown v. Am. Family Ins. Grp.*, 989 P.2d 196, 197–98 (Colo. App. 1999) ("by the terms of the policy, plaintiff's cause of action accrued by the time of their settlement."); *Consiglio v. Transamerica Ins. Grp.*, 737 A.2d 969, 971 (Conn. App. Ct. 1999) (applying the exhaustion clause of the insurance policy, making the date of accrual the date of settlement or judgment for underlying insurance); *Butler v. Econ. Fire & Cas. Co.*, 557 N.E.2d 1281, 1286 (Ill. App. Ct. 1990) (interpreting the insurance policy's phrase "occurrence of loss" to mean the loss stemming from the tortfeasor's underinsurance relative to the plaintiff's damages, and thereby eliminate any conflict between the exhaustion clause and limitations clause of the policy). Even Florida and Minnesota courts—which have taken a middle-ground approach—hold that an action for UIM benefits accrues on the date of the accident unless an exhaustion clause in the insurance policy tolls the limitations period until settlement or judgment with the tortfeasor. *Woodall v. Travelers Indem. Co.*, 699 So. 2d 1361, 1363–65 (Fla. 1997); *Sargent v. State Farm Mut. Auto. Ins. Co.*, 486 N.W.2d 14, 16 (Minn. Ct. App. 1992). Having previously held such exhaustion provisions to be void in Idaho, we will not adopt a rule that relies on a void exhaustion provision as the basis for an accrual date. *See Hill,* 150 Idaho at 627, 249 P.3d at 820.

Other courts have adopted the rule that the limitations period for a UIM claim begins to run on the date of the incident, as Farmers encourages us to do. *See Woodall*, 699 So. 2d at 1363–65; *Green v. Selective Ins. Co. of Am.*, 676 A.2d 1074, 1078–79 (N.J. 1996). "The jurisdictions that favor this approach reason that the right of action against the UIM carrier stems from the plaintiff's right of action against the tortfeasor, and thus the limitations period begins at the same time for both the insurance and the tort actions." *Green*, 676 A.2d at 1078. Or, as

articulated by the Supreme Court of Iowa, "the insured's claim for UIM benefits derives from the tort claim against the underinsured tortfeasor and that the insurer essentially stands in the shoes of the tortfeasor." *Hamm*, 612 N.W.2d at 782 (analyzing and rejecting "the date of incident" rule). In essence, the focus of this rule is the question of whether the cause of action is based on a tort or a contract, as well as the nature of the relationship between the insured and her insurance provider for a UIM claim.

We reject the "date of incident" rule for two key reasons: first and foremost, we conclude that an insured's recovery from its own insurer primarily depends on the insurance contract—the basis for the insurer's liability—rather than the underlying tort. *See Shelter Mut. Ins. Co. v. Nash*, 184 S.W.3d 425, 427 (Ark. 2004); *Hamm*, 612 N.W.2d at 782; *Wille v. Geico Cas. Co.*, 2 P.3d 888, 892 (Okla. 2000). This has been implicitly recognized by both parties; indeed, Farmers has conceded that the applicable statute of limitations in this case is the five-year statute for the breach of a written contract pursuant to section 5-216 of the Idaho Code, rather than the two-year statute applicable to Klein's tort claims against Hale provided in section 5-219(4). When all aspects of the insurer/insured relationship are taken together, the relationship is, in its essence, contractual in nature.

Second, applying an early accrual date—tied to of the date of the accident—raises concerns of fairness to prospective plaintiffs. The Supreme Court of Nevada has adroitly articulated these concerns:

> It would be fundamentally unfair to time-bar an insured from compensation that she bargained for because an insured may not be aware until long after the accident that she will need to pursue a claim against her UIM insurer. Specifically, at the time of the accident or even several years thereafter, the insured may not know the extent of her injuries, the amount of the tortfeasor's available coverage, or whether the cost of her medical treatment will exceed the value of the tortfeasor's insurance policy and available assets.

*Grayson v. State Farm Mut. Auto. Ins.*, 971 P.2d 798, 799–800 (Nev. 1998), *as modified on denial of reh'g* (Mar. 19, 1999). Such concerns echo in Idaho case law where this Court has invalidated contractual provisions which run afoul of the public policy set by the Idaho Legislature. Specifically, in *Hill*, we noted the potential delays a plaintiff could endure in litigating or settling with the tortfeasor prior to making a UIM claim. *Hill*, 150 Idaho at 626, 249 P.3d at 819 ("Litigation would create drastic delays for litigants who may have suffered serious injuries and desperately need to collect benefits. These delays would be exacerbated by the fact

8

that the claimant may have to undergo further arbitration against the UIM carrier after obtaining a judgment from the tortfeasor."). Likewise, a plaintiff pursuing her UIM claim would be up against the clock as she tries to settle her claims with both her insurance provider and the tortfeasor from the date of the accident, especially if she does not yet know the extent of her injuries or whether the tortfeasor will ultimately be underinsured.

Perhaps most importantly, however, the "breach of contract" rule provides the court with an actual justiciable controversy—a fundamental precursor to any lawsuit. As the Massachusetts Supreme Court has explained, the minority approaches both lead to serious justiciability concerns: "[p]rior to the time when the contract is violated there is no justiciable controversy, and it would be illogical to let the statute of limitations for bringing an action begin to run before the action can be brought." *Berkshire Mut. Ins. Co*, 664 N.E.2d at 1188. On the other hand, the "breach of contract" rule corresponds well with existing Idaho case law, which mandates that "[a] cause of action accrues and the statute of limitations begins to run when a cause of action exists." *Swafford v. Huntsman Springs, Inc.*, 163 Idaho 209, 212, 409 P.3d 789, 792 (2017) (quoting *Lido Van and Storage, Inc. v. Kuck*, 110 Idaho 939, 942, 719 P.2d 1199, 1202 (1986)).

Idaho Code section 5-216 imposes a five-year statute of limitations for "an action upon any contract, obligation or liability founded upon an instrument in writing." Generally, the cause of action accrues upon the breach of contract, which could encompass various circumstances in the UIM context, including a refusal of payment, the rejection of a claim, or the denial of a request for arbitration. *See, e.g., Erie Ins. Exch.*, 174 A.3d at 589; *McDonnell*, 299 P.3d at 728. At the time of settlement with, or judgment against, a tortfeasor, the insured only has knowledge that some payment is still owed to her because the tortfeasor was underinsured. Should she bring an action at this stage—before the insurance provider has acted on the UIM claim—the insured lacks an actual injury against the insurer, or, at the very least, an unripe claim. Because the plaintiff does not have an action, or an injury, by simply knowing how much she is owed by her insurer under the UIM policy, her cause of action is, at best, speculative and undetermined. On the date of the accident, the insured has even less of a claim because she does not yet know if the third-party tortfeasor is underinsured, much less whether her insurance company will breach the UIM policy or pay in full. On the other hand, the "breach of contract" rule provides for a clear cause of action on a justiciable controversy because the insured will be able to allege an actual

9

injury caused by the insurance provider based upon an actual breach of contract, rather than hypothetical and speculative claims.

Farmers argues that the "breach of contract" rule has proven unworkable because it indefinitely extends the time within which to make a UIM claim. Additionally, Farmers suggests that applying a breach of contract standard will create uncertainty as to whether and when an insurer breaches the insurance policy. However, this concern was addressed and appropriately rejected by the Supreme Court of Pennsylvania:

> These apprehensions about an insured delaying submission of a claim or an insurer delaying action on a claim may be of concern but do not justify departing from the normal breach of contract principles attendant to triggering the statute of limitations. We note that an insured would rarely be advantaged by delay in the submission of a claim and insurers are charged with acting in good faith. Deviations from these norms may be addressed on equitable grounds or in other ways based on particular facts.

*Erie Ins. Exch.*, 174 A.3d at 589. Likewise, it is a fallacy for Farmers to contend there is greater uncertainty generated under this rule, when it has the option to file an action seeking arbitration itself, rather than allowing the process to languish. Any uncertainty created where parties dispute when an alleged breach of contract occurred becomes a question of fact for the arbitrator, just as in any other contractual litigation. *Borah v. McCandless*, 147 Idaho 73, 79, 205 P.3d 1209, 1215 (2009) ("Generally, unless the facts presented are undisputed, whether there was a breach of the terms of a contract is a question of fact."). Moreover, this is not a case where it can be fairly argued that the insured merely sat on her claim at the expense or frustration of her insurance company. Klein filed her UIM claim with Farmers after settling her claim against Hale. Farmers made a payment and then explicitly kept the claim open subject to Klein's future medical needs. Later on, when the parties began to dispute how to resolve the claim and whether the statute of limitations had run, Farmers offered to go to mediation to resolve Klein's claim. In short, Farmers had numerous opportunities to ensure the UIM claim was not left open for an indeterminate period of time. Nothing prevented it from demanding arbitration under its policy or closing the UIM claim at an earlier date.

While Farmers argues that the "breach of contract" rule has "fall[en] out of favor," it fails to cite to any authority that supports this contention. In fact, the opposite assertion is true; a majority of jurisdictions that have considered the issue now favor the breach of contract rule for the reasons set out above. *See, e.g., Erie Ins. Exch.*, 174 A.3d at 587.

10

The Court is mindful of the apparent paradox in this case: neither party has specifically argued that there was a breach of contract here. Indeed, Klein's briefing states "there has been no breach of the insurance contract," while recognizing that Farmers's refusal to participate in arbitration would act as a breach of the insurance contract. Of course, this is the natural result of the language in the insurance policy requiring the parties to demand arbitration by filing an action in court, or by sending a certified letter. Here, Klein initiated this action to compel arbitration. Incidental to that is the question answered here today, when does such an action accrue.

A similar situation occurred in *Erie*, where the parties selected arbitrators, fell out of communication, and then the insurer sought a declaratory action on the question of the action's accrual date. *Erie Ins. Exch.*, 174 A.3d at 581. The Supreme Court of Pennsylvania concluded that there was no accrued cause of action because the insurer had not yet refused arbitration or denied coverage. *Id.* at 589–90. Unlike the district court in this case, the trial court in *Erie* erred in granting summary judgment to the insurer on the basis that the statute of limitations had expired, resulting in that case being reversed and remanded for further proceedings. *Id.* Here, the district court correctly applied the "breach of contract" rule, and concluded that Klein's complaint was not time barred by the five-year statute of limitations. Accordingly, we affirm the district court's order.

## IV. CONCLUSION

After reviewing the different approaches taken by other states, and the compelling arguments for and against these approaches proffered by learned counsel, we now adopt the majority's "breach of contract" rule, which is the most consistent with Idaho law, public policy, and the justiciability doctrine. Because the application of the "breach of contract" rule would not bar Klein's claim on timeliness grounds, we affirm the district court's rulings which denied Farmers's motion for summary judgment and its subsequent motion to reconsider. The case is remanded for further proceedings consistent with this Opinion. Costs are awarded to Klein as the prevailing party.

Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**